UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
:
DONALD E BEAVERS, :
: CASE NO. 1:19-cv-140
Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Docs. 1, 16]
COMMISSIONER OF SOCIAL :
SECURITY, :
:
Defendant. :
:
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Donald Beavers seeks review of the Social Security Administration's denial of supplemental security income, period of disability, and disability insurance benefits.[1] Magistrate Judge Jonathan Greenberg recommended affirming the denial of benefits.[2] Plaintiff objects.[3]

For the reasons stated below, this Court **OVERRULES** Plaintiff's objection, **ADOPTS** the Magistrate Judge's Report and Recommendation ("R&R"), and **AFFIRMS** the decision of the Commissioner of Social Security.

## I. Background

On July 29, 2015, Plaintiff, then 53-years-old, applied for Social Security disability insurance benefits, claiming disability due to stroke, memory loss, transient ischemic attacks, back surgery, bilateral arm surgeries, left wrist fusion, left hip arthritis, lumbar degenerative disc disease, arthritis in both knees, and depression.[4] Beavers' application

---

[1] Doc. 1.
[2] Doc. 15.
[3] Doc. 16.
[4] Doc. 10 ("Transcript" or "Tr.") at 105, 193-194.

Case No. 19-cv-140
Gwin, J.

was denied, and Beavers requested a hearing before a Social Security Administrative Law Judge ("ALJ").[5]

In April 2016, Beavers applied for social security income.[6]

On May 2, 2017, Plaintiff had a hearing before the ALJ.[7]

On August 21, 2017, the ALJ found Plaintiff not disabled.[8]

On November 26, 2018, the Appeals Council declined further review of Beaver's disability insurance benefits claim,[9] but found that Beavers was disabled and entitled to benefits as of his 55th birthday in relation to his social security income claim.[10]

On January 18, 2019, Plaintiff filed the instant case seeking review of the Social Security Administration's unfavorable decision.[11]

In his merits brief, Plaintiff argued that the ALJ's determination that Beavers is capable of a range of light work is not supported by substantial evidence.[12]

On October 1, 2019, the magistrate judge recommended that the Court affirm the Social Security Administration's denial of benefits.[13] The magistrate judge found that the "ALJ provided an extensive analysis" of the records and evidence and determined that Beavers could perform light work.[14] Magistrate Judge Greenberg also noted that "[o]n

---

[5] Tr. at 139.
[6] Plaintiff represents that he applied for social security income at this time, though the claim was not adjudicated until the ALJ decision and it does not appear in the record. Doc. 11 at 2 n. 2.
[7] Tr. at 77-104.
[8] Tr. at 50-76.
[9] Tr. at 13.
[10] Tr. at 1.
[11] Doc. 1.
[12] Doc. 11 at 10-12. Defendant responded with a brief on the merits. Doc. 14.
[13] Doc. 15.
[14] *Id.* at 27.

Case No. 19-cv-140
Gwin, J.

judicial review, Beavers points to no contrary lines of evidence that the ALJ ignored or overlooked."[15]

On October 15, 2019, Plaintiff objected to the magistrate judge's report and recommendation ("R&R").[16]

## II. Standard of Review

The Federal Magistrates Act requires a district court to conduct a *de novo* review of those portions of the R&R to which the parties object.[17] The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[18]

When reviewing an ALJ's disability determination under the Social Security Act, a district court considers whether the ALJ's determination is "supported by substantial evidence" and "made pursuant to proper legal standards."[19] Substantial evidence is more than a scintilla of evidence and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[20]

A district court may not reverse an ALJ's decision when substantial evidence supports it, even if the court would have made a different decision.[21] The Commissioner's findings are not subject to reversal even if substantial evidence supports a different conclusion.[22]

---

[15] *Id.*
[16] Doc. 16. Defendant replied to Plaintiff's objections. Doc. 17.
[17] 28 U.S.C. § 636(b)(1).
[18] *Id.*
[19] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see also* 42 U.S.C. § 405(g).
[20] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted).
[21] *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (holding that an ALJ's decision cannot be overturned so long as the ALJ's decision was supported by substantial evidence).
[22] *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citation omitted).

Case No. 19-cv-140
Gwin, J.

### III. Discussion

To establish disability under the Social Security Act, a plaintiff must show that he cannot engage in any substantial gainful activity because of a "medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."[23]

Part of the disability determination process requires the Commissioner to decide whether work exists in the national economy that the applicant is able to perform.[24] This analysis considers the applicant's residual functional capacity, together with other vocational factors, to determine whether the applicant can make the adjustment to other forms of work.[25]

After considering the record, the ALJ found that Beavers "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant has the ability to use the left lower extremity occasionally to operate foot controls, and the ability to use the bilateral hands frequently for fingering and feeling."[26]

Plaintiff challenges the ALJ's determination, arguing that it is not supported by substantial evidence. In regards to the social security income claim specifically, Beavers says that "[t]he ALJ's own analysis of the evidence was internally inconsistent and failed to

---

[23] 42 U.S.C. § 423(d)(1)(A); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).
[24] 20 C.F.R. § 404.1520(g).
[25] *Id.*
[26] Tr. 58-70.

-4-

adequately address Plaintiff's lumbar and left-knee impairments," which affects Plaintiff's ability to stand and walk and is "particularly relevant" to the disability determination.[27]

As they concern separate time periods, the Court will conduct separate *de novo* reviews of the ALJ's residual functional capacity findings for Beavers' disability insurance and social security income claims.

### a. Disability Insurance Benefits Claim

Plaintiff must establish a continuous twelve-month disability commencing between February 1, 2012 and December 31, 2014 in order to obtain disability insurance benefits.[28]

The ALJ found that there was little medical evidence from this time period.[29] Beavers' medical records from this period present a limited picture of his physical condition. While Beavers reported to the emergency department more than once in this period complaining of injuries from falls, the records indicate that he maintained a full range of motion on the left hip, had a normal gait, could mobilize, and had full strength in his extremities.[30]

Beavers' briefing only discusses medical evidence after June 2, 2015.[31] He does not point to any evidence during the relevant range for his disability insurance benefits claim that contradicts the ALJ's determination. In fact, Beavers' submission to the ALJ admits that "there is not a significant amount of evidence prior to the expiration of his insured status"

---

[27] Doc. 16 at 2.
[28] These dates represent Beavers' alleged disability onset date and his date of last insured. In order to receive disability insurance benefits under the Social Security Act, Beavers' disability must be expected to result in his death or have lasted or be expected to last for at least twelve months. 20 C.F.R. § 404.130.
[29] Tr. at 60.
[30] *Id.* at 281-301.
[31] Doc. 11 at 3.

and that his "claim involves primarily orthopedic impairments that have more recently been treated and documented."[32]

In light of the above, the ALJ had substantial evidence for the decision. The R&R regarding the disability insurance benefits claim is **ADOPTED** and the decision of the Commission **AFFIRMED**.

### b. Social Security Income Claim

Beavers' briefing and objections to the R&R focus on the medical evidence post-relating to his social security income claim. Indeed, the bulk of the medical evidence focuses on Beavers' medical issues that began in 2015. The ALJ accordingly devoted a significant amount of her residual functional capacity analysis to Beavers' 2015 to 2017 medical records.[33] After summarizing the medical evidence underlying her finding, the ALJ determined that Beavers could suffer light work with specified limitations.[34]

On review, the Court's charge is not to second-guess the ALJ's determination, but to ensure that it was supported by substantial evidence.

Contrary to Beavers' assertion that "[t]he record simply contains no objective evidence contrary to Plaintiff's subjective allegations, and no medical opinions contrary to his subjective allegations," the ALJ's decision pointed to substantial evidence in the record supporting her findings.

---

[32] Tr. at 269.
[33] *Id.* at 58-70. As the magistrate judge correctly notes, the Appeals Council reviewed and affirmed the ALJ's social security income decision, which became the final decision of the Commission in this case. The substantial evidence standard of review also applies to decision of the Appeals Counsel. *Taylor v. Comm'r of Soc. Sec.*, No. 95-3767, 1996 WL 400175, at *4, n.2 (6th Cir. 1996). The Appeals Council adopted the "reasons set forth by the Administrative Law Judge." Tr. 6. This Court will therefore refer to the ALJ's reasoning as it was adopted by the Appeals Council in its final determination of the issue.
[34] Tr. at 58-59.

Case No. 19-cv-140
Gwin, J.

In particular, the ALJ pointed to portions of the record that indicated that Beavers "maintains full upper extremity strength, normal upper extremity sensation and reflexes, and intact coordination."[35] Additionally, although the ALJ noted that medical "examinations have revealed chronic low back pain with decreased lumbar range of motion, occasionally decreased right lower extremity sensation" as well as "left hip pain with decreased range of motion and weakness, left knee tenderness with slight weakness and laxity," she also pointed to the records' indication that Beavers had "full right lower extremity strength, otherwise full left lower extremity strength, otherwise normal sensation, generally normal reflexes, and consistently independent ambulation."[36] The ALJ acknowledged Beavers' history of left hip and knee issues in her limitation of his work to "occasional operation of foot controls with the left lower extremity."[37]

After reviewing the medical evidence, the ALJ found that the "claimant's impairments are not as debilitating as [Beavers] alleged."[38] The ALJ based this conclusion on Beavers' testimony, where Beaver indicated that while he sometimes had to pull over while driving due to pain and had difficulty writing and performing self-care, he was able to load the dishwasher and work in the garden and also went grocery shopping with his mother on occasion.[39] He was also able to perform recent work operating heavy machinery.[40]

---

[35] *Id.* at 68 (citing eleven records in evidence in support of this conclusion).
[36] *Id.* (citing fourteen records in evidence in support of these conclusions).
[37] *Id.*
[38] *Id.* at 69.
[39] *Id.*
[40] *Id.* Beavers testimony indicated that he was able to operate the machinery but had to take breaks "every now and then," which eventually caused him to be let go from the position. Tr. at 82.

Additionally, the ALJ noted that Beavers had significant improvement after his left hip replacement and did not need an assistive device with ambulation.[41] Despite the pain Beavers reported, the treatment of his conditions was "relatively conservative" and Beavers had not sought "alternative treatment modalities such as acupuncture, massage therapy, chiropractic treatment, or participation in pain management or a chronic pain rehabilitation program."[42] Finally, no treating sources had placed any restrictions on Plaintiff.[43]

Beavers argues that the ALJ's residual functional capacity determination is wrong because the record does not contain "examining or reviewing opinions as to Plaintiff's residual functional capacity" and the "ALJ was the first and only source to . . . devise a residual functional capacity."[44] As the R&R correctly points out, however, the ALJ has the final authority to determine the residual functional capacity and is not required to based the decision on a physician's opinion on the subject.[45]

In his objections to the R&R, Beavers argues that ALJ failed to address "Plaintiff's lumbar and left-knee impairments, particularly relevant to Plaintiff's ability to tolerate prolonged standing and walking."[46] Contrary to Beavers' assertions, however, the ALJ did address these issues. As noted above, the ALJ placed restrictions on Beavers' light work to accommodate his left-knee and hip issues. At the same time, however, the ALJ noted that Beavers had "improved left hip functioning, with good postoperative appearance on x-ray, and only slightly decreased left knee strength and subtle laxity."[47] Additionally, the ALJ

---

[41] Tr. at 69.
[42] *Id.*
[43] *Id.*
[44] Doc. 11 at 11.
[45] *Rudd v. Comm'r Of Soc. Sec.*, 531 F. App'x 719, 727-28 (6th Cir. 2013).
[46] Doc. 16 at 2.
[47] Tr. at 68.

Case No. 19-cv-140
Gwin, J.

found the Plaintiff's conditions to be manageable and "not as debilitating as he has alleged."[48]

Finally, Beavers asserts that the ALJ's residual functional capacity determination is internally inconsistent. Beavers argues that although the ALJ found Beavers' impairments to be "severe" and stated that the "conditions would reasonably result in difficulty with particular activities, including lifting and carrying, and prolonged standing, walking, and sitting," she still inconsistently found that Beavers could engage in light work, which requires the ability to stand and or walk six out of eight hours.

However, although the ALJ explained that although Beavers' impairments "could reasonably be expected to cause some of the alleged symptoms," the medical evidence did not support all of claimant's statements regarding the effects of the symptoms.[49] Additionally, while acknowledging Beavers' impairments, the ALJ found that the medical records supported his ability to use his upper extremities for lifting, "full right lower extremity strength," and "consistently independent ambulation."[50] The ALJ credited some of Beavers' subjective evidence as well as medical reports regarding limitations with his left lower extremities by placing restrictions on his use of that extremity to operate foot controls.[51]

Beavers' suggestion that because the ALJ found that he had "severe" impairments it was inconsistent for the ALJ to limit him to light work ignores the basics of the disability evaluation process. Had the ALJ found that Beavers' impairments were not severe, the

---
[48] *Id.* at 69.
[49] *Id.* at 60.
[50] *Id.* at 68.
[51] *Id.*

Case No. 19-cv-140
Gwin, J.

disability evaluation process would have ended before the ALJ even proceeded to the residual functional capacity determination.[52] Beavers' argument is therefore nonsensical.

In sum, the ALJ's decision is supported by substantial evidence and was made pursuant to proper legal standards. The R&R regarding the social security income claim is **ADOPTED** and the decision of the Commission **AFFIRMED**.

### IV. Conclusion

For these reasons, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the Magistrate Judge's Report and Recommendation, and **AFFIRMS** the decision of the Commissioner of Social Security.

IT IS SO ORDERED.

Dated: February 28, 2020        *s/    James S. Gwin*
                                JAMES S. GWIN
                                UNITED STATES DISTRICT JUDGE

---

[52] 20 C.F.R. § 416.920(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a sever medically determinable physical or mental impairment . . . we will find that you are not disabled."); s*ee also*, 20 C.F.R. § 416.920(v) ("At the fifth and last step, we consider our assessment of your residual functional capacity . . . to see if you can make an adjustment to other work.").